UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jarod Mostrom-Ose, | Civ. No. 16-2513 (PAM/LIB) |
| Plaintiff, | |
| v. | |
| Rawlings Industrial, Inc., and Tinsley Consulting Group, LLC, | |
| Defendants, | **MEMORANDUM AND ORDER** |
| Rawlings Industrial, Inc., | |
| Third-Party Plaintiff, | |
| v. | |
| Potlatch Corporation, | |
| Third-Party Defendant. | |

This matter is before the Court on Motions for Summary Judgment filed by Defendants Rawlings Industrial, Inc., and Tinsley Consulting Group, LLC. For the following reasons, the Motions are granted.

**BACKGROUND**

This lawsuit stems from injuries Plaintiff Jared Mostrom-Ose sustained at Third-Party Defendant Potlatch Corporation's saw mill in Bemidji, after Potlatch commenced a modernization project to upgrade the mill's saw line. Mostrom-Ose is a utility worker for Potlatch.

The modernization project included the installation of two cranes that would rest on overhead tracks supported by steel beams.  (Kirsch Decl. (Docket No. 93-1) Ex. 2 (Aube Dep.) at 9-10.)  Potlatch hired MP-Squared Structural Engineers, LLC,[1] to create drawings for the project.  (Id. (Docket No. 93-1) Ex. 9 (Anderson Dep.) at 13-16.) Potlatch separately contracted with Tinsley to perform "engineering related, project management and construction management services" related to the modernization project.  (Lauricella Aff. (Docket No. 101-2) Ex. 2 (Service Contract) at 1.)  Finally, Potlatch hired Rawlings to install the support beams and perform other work on site. (Aube Dep. at 16; Kreidler Aff. (Docket No. 72-1) Ex. B (Rawlings Dep.) at 106-07.)

Rawlings installed one support beam only four feet, ten inches above an existing staircase that led to a catwalk.  (Kirsch Decl. (Docket No. 93-2) Ex. 22 (Werlein Dep.) at 23.)  Occupational Safety and Health Act ("OSHA") regulations require that the "[v]ertical clearance above any stair tread to any overhead obstruction [be] at least 6 feet, 8 inches."  29 C.F.R. § 1910.25(b)(2).  Rawlings claims that it installed the support beam as directed, but the construction drawings did not specify any catwalk in that location. Regardless, Rawlings could not have installed it in a different location or at a different height because the overhead crane tracks had to be at the same elevation throughout the mill for the two cranes to function properly.

Rawlings notified Potlatch immediately after it installed the support beam.  And apparently Potlatch had plans to relocate the catwalk.  Potlatch employee Pete Aube

---

[1] Mostrom-Ose voluntarily dismissed his claims against MP-Squared so it is no longer a Defendant in this matter.  (Docket Nos. 85, 87.)

2

testified that the steel "beams have to go" where they go, but moving catwalks at the mill is "very common." (Aube Dep. at 66.) In the meantime, Potlatch attached padding to the edges of the support beam and painted that padding yellow. Potlatch also warned its employees of the hazardous condition, but Mostrom-Ose contends that no one warned him of the hazard.

Nine days after Rawlings installed the support beam, Mostrom-Ose sustained severe injuries by hitting his head on it. (Kirsch Decl. Ex. 7 (Schimenek Dep.) at 29-30, 38-39; Aube Dep. at 9-10.) Mostrom-Ose contends that Defendants caused his injuries by creating a hazardous condition that violated OSHA regulations and contractual obligations, and the Second Amended Complaint claims that Defendants were negligent, negligent per se, strictly liable for failure to warn, and that Defendants breached an implied warranty. (2d Am. Compl. (Docket No. 18).) Defendants now move for summary judgment.

## DISCUSSION

### A.     Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing

a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.    Negligence Per Se**

Mostrom-Ose alleges that Defendants are negligent per se for violating OSHA regulations. But generally, "OSHA only governs duties that are owed by an employer to an employee." Banovetz v. King, 66 F. Supp. 2d 1076, 1081 (D. Minn. 1999) (Erickson, M.J.). Mostrom-Ose argues that OSHA regulations also govern Defendants' duties based on OSHA's multi-employer worksite policy. (See Lauricella Aff. (Docket No. 99-24).)

In a multi-employer worksite, an "employer that caused a hazardous condition that violates an OSHA standard . . . is citable even if the only employees exposed are those of other employers at the site." (Id. at 3.) However, even if OSHA governed Defendants' duties, the violation of an OSHA regulation cannot constitute negligence per se. Jones v. Spentonbush-Red Star Co., 155 F.3d 587, 595-96 (2d Cir. 1998); see Solo v. Trus Joist MacMillan, No. 02-cv-2955, 2004 WL 524898, at *7 (D. Minn. Mar. 15, 2004) (Kyle, J.) (concluding that Minnesota law does not permit OSHA violations to form the basis for a negligence per se claim).

Defendants' Motions on the negligence per se claims are granted, and Counts IV and V are dismissed.

**B.    Negligence**

In Counts I and II, Mostrom-Ose alleges that Defendants breached their duty of reasonable care by installing the support beam in an unsafe place and without adequate

4

safety guards or warnings.  A negligence claim requires "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury."  Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995).  Defendants argue that they owed no duty to Mostrom-Ose and that, regardless, Mostrom-Ose cannot establish any breach of duty or causation.

"Generally, a defendant's duty to a plaintiff is a threshold question because '[i]n the absence of a legal duty, the negligence claim fails.'"  Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) (alteration in original) (quoting Gilbertson v. Leininger, 599 N.W.2d 127, 130 (Minn. 1999)).  Here, Mostrom-Ose claims that Defendants' duty to him arises under contractual obligations and pursuant to OSHA regulations.

Defendants argue that OSHA's multi-employer worksite policy does not apply to them.  But even if it did, OSHA "regulations do not independently create private rights of action or impose alternative duties on defendants."  Chew v. Am. Greetings Corp., 754 F.3d 632, 637 (8th Cir. 2014); accord 29 U.S.C. § 653(b)(4) ("Nothing in this chapter shall be construed . . . to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.").  Thus, an OSHA regulation cannot impose any legal duty on Defendants for purposes of a negligence claim.

Mostrom-Ose also believes that Rawlings had a duty "to install all support steel, including the incident beam, safely." (Pl.'s Rawlings Opp'n Mem. (Docket No. 98) at 4.) And Tinsley's duties included "perform[ing] its assigned tasks such that the finished,

5

installed product would be safe." (Pl.'s Tinsley Opp'n Mem. (Docket No. 100) at 4.) According to Mostrom-Ose, these duties stem from numerous documents related to the work Defendants performed, including Tinsley's request for proposal, the technical specifications, the scope of work, and Tinsley's service contract. (Lauricella Aff. (Docket No. 99) Ex. 2 at 2-3, Ex. 5 at 5; 2d Lauricella Aff. (Docket No. 101) Exs. 2, 7.)

But even Mostrom-Ose points out that any contractual arrangement was between Defendants and Potlatch—not Mostrom-Ose. (Pl.'s Tinsley Opp'n Mem. at 4.) And in any event, "[w]hen a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence." United States v. Johnson, 853 F.2d 619, 622 (8th Cir. 1988); Glorvigen v. Cirrus Design Corp., 816 N.W.2d 572, 584 (Minn. 2012) ("[A] party is not responsible for damages in tort if the duty breached was merely . . . imposed by contract.") (quotations omitted). Thus, Defendants' contractual obligations to Potlatch cannot be the basis for a separate legal duty owed to Mostrom-Ose.

Because Mostrom-Ose has failed to identify any legal duty, the Court need not consider the remaining negligence arguments. Mostrom-Ose's negligence claims must be dismissed.

## C. Strict Liability – Failure to Warn

There is no clear standard for a strict liability failure-to-warn claim, but the Minnesota Supreme Court has stated "that strict liability for failure to warn is based upon principles of negligence." Germann v. F.L. Smithe Mach. Co., 395 N.W.2d 922, 926 n.4 (Minn. 1986). "A plaintiff asserting a negligent failure-to-warn claim under Minnesota

6

law 'must show: (1) the defendant[s] had reason to know of the dangers of using the product; (2) the warnings fell short of those reasonably required, breaching the duty of care; and (3) the lack of an adequate warning caused the plaintiff's injuries.'" In re Levaquin Prod. Liab. Litig., 700 F.3d 1161, 1166 (8th Cir. 2012) (quoting Tuttle v. Lorillard Tobacco Co., 377 F.3d 917, 924 (8th Cir. 2004)). For strict liability, the Court imputes knowledge of the hazard and its risks to the manufacturer. Bilotta v. Kelley Co., 346 N.W.2d 616, 622 (Minn. 1984)).

Here, Mostrom-Ose claims that Defendants are strictly liable for failing to warn him of the low-clearance hazard created by the installation of the support beam. But a cause of action for failure to warn requires a product. Cf. id. (stating that a court imputes to the manufacturer "knowledge of the condition of the product and the risks involved" in a strict liability failure-to-warn claim). Mostrom-Ose argues that Defendants sold services to Potlatch by installing the incident beam. But he cites no authority for the proposition that the services provided here can form the basis for a failure-to-warn claim.

Mostrom-Ose also contends that Rawlings sold products in the form of installed structural steel and concrete. This argument is disingenuous. The Second Amended Complaint references only Defendants' installation services, not any products. Additionally, Mostrom-Ose's claims only refer to the allegedly unsafe location in which the beam was installed—not that the steel or concrete used was somehow defective.

Finally, to the extent that Mostrom-Ose believes that Defendants breached some contractual duty to warn him of hazards, as discussed above, that argument is meritless. Johnson, 853 F.2d at 622. The failure-to-warn claims are dismissed.

**D.     Breach of Implied Warranty**

Mostrom-Ose claims that Defendants breached their implied warranty to install the support beam safely, but he does not identify whether this claim refers to the implied warranty of merchantability or the implied warranty of fitness for intended use. Regardless, a claim asserting a breach of either type of warranty generally requires a product or good.  See Driscoll v. Standard Hardware, Inc., 785 N.W.2d 805, 816-17 (Minn. Ct. App. 2010) (discussing implied warranties in the context of products liability). Mostrom-Ose argues that a claim for breach of implied warranty also extends to the services that Defendants performed here, relying heavily on O'Laughlin v. Minnesota Natural Gas Co., 253 N.W.2d 826, 831 (Minn. 1977), and Robertson Lumber Co. v. Stephen Farmers Cooperative Elevator Co., 143 N.W.2d 622 (Minn. 1966).

In Robertson Lumber, the Minnesota Supreme Court extended implied warranties to construction contracts in specific circumstances where "the contractor holds himself out . . . as competent to undertake the contract" and the owner has no expertise in the work contemplated, furnishes no plans or designs, and "indicates his reliance on the experience and skill of the contractor."  143 N.W.2d at 626.  Then in 1977, the court held that an implied warranty covers "some related service[s], such as construction," if attached to the sale of a good.  O'Laughlin, 253 N.W.2d at 831 (quotation omitted).  One year later, the court refused to extend implied warranty claims to architectural contracts. City of Mounds View v. Walijarvi, 263 N.W.2d 420, 424 (Minn. 1978).  As another Court in this District noted, "[n]o Minnesota Court has since attempted to define construction contracts . . . covered by implied warranties," and the caselaw has shifted to

8

focus on the predominant purpose test.  Spectro Alloys Corp. v. Fire Brick Eng'rs Co., 52 F. Supp. 3d 918, 927 (D. Minn. 2014) (Montgomery, J.).

Under the predominant purpose test, the question is whether the "predominant purpose of the contract" is the sale of goods or the rendition of services.  McCarthy Well Co. v. St. Peter Creamery, Inc., 410 N.W.2d 312, 315 (Minn. 1987).  Those "services rendered in conjunction with the sale of goods are covered by the implied warranties of the U.C.C."  Valley Farmers' Elevator v. Lindsay Bros. Co., 380 N.W.2d 874, 879 (Minn. Ct. App. 1986).

Here, the predominant purpose of Defendants' installation and design contracts was to render construction services.  Mostrom-Ose argues that the good or product here is the steel itself.  But, again, the Second Amended Complaint alleges that Mostrom-Ose relied on the implied warranties "in deciding to purchase Defendant[s'] services."  (2d Am. Compl. ¶¶ 99, 107.)  It says nothing about goods or products related to those services.  The scope of work clearly related to Potlatch's modernization project, and Defendants' role in that project was to design and install support steel "for structural modifications."  (Docket No. 99-2 at 3.)  Nothing that Mostrom-Ose identifies suggests that the predominant purpose was the sale of goods.  Thus, implied warranties do not attach and these claims must be dismissed.

**CONCLUSION**

Although Mostrom-Ose suffered severe injuries, Defendants are not liable under these circumstances.  Additionally, it appears that Rawlings' Third Party Complaint may now be moot.  Thus, the parties may submit letter briefs on the status of the Third Party

Complaint by June 22, 2018. Failure to do so will result in its dismissal with prejudice. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant Tinsley Consulting Group's Motion for Summary Judgment (Docket No. 68) is **GRANTED**;

2. Defendant Rawlings Industrial's Motion for Summary Judgment (Docket No. 73) is **GRANTED**;

3. The Second Amended Complaint (Docket No. 18) is **DISMISSED with prejudice** as to Defendants Rawlings Industrial and Tinsley Consulting Group; and

4. The parties may submit letter briefs to the Court regarding the status of the Third Party Complaint (Docket No. 14) on or before June 22, 2018.

Dated: June 5, 2018

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge